IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COURTLAND D. ROMEO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | C.A. No. 20-721 (MN) |
| ) | |
| ROBERT MAY, and ) | |
| ATTORNEY GENERAL OF THE STATE ) | |
| OF DELAWARE, ) | |
| ) | |
| Respondents. ) | |

### MEMORANDUM OPINION

Courtland D. Romeo – *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.

June 29, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is a Petition and Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Courtland D. Romeo ("Petitioner"). (D.I. 3; D.I. 13-1). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 18; D.I. 24). For the reasons discussed, the Court will deny the Petition in its entirety as barred by the one-year limitations period prescribed in 28 U.S.C. § 2244.

**I.     BACKGROUND**

> On the evening of June 1, 2007, Wilmington police officers responded to a 911 call near the intersection of South Harrison Street and Elm Street. Upon arrival, officers discovered a crowd gathered around Antoine Mayo ("Antoine") who was lying in the street, bleeding from his head. Shortly thereafter, an ambulance took Antoine to a hospital where he was pronounced dead. The Deputy Chief Medical Examiner determined that Antoine died from a penetrated gunshot wound to the arm and chest and the injuries that resulted.

*State v. Romeo*, 2019 WL 918578, at *2 (Del. Super. Ct. Feb. 21, 2019).

On June 25, 2007, a Superior Court grand jury indicted Petitioner for first degree murder, possession of a firearm during the commission of a felony ("PFDCF"), and possession of a deadly weapon by a person prohibited ("PDWPP"). (D.I. 19-13 at 22-23). Petitioner filed a motion to sever the PDWBPP count, which the Superior Court granted. *See Romeo v. State*, 21 A.3d 597 (Table), 2011 WL 1877845, at *1 (Del. May 13, 2011). Petitioner's case proceeded to trial. The Superior Court found Petitioner guilty of PDWPP, but a Superior Court jury deadlocked on the first-degree murder and PFDCF charges. *See id*. On November 9, 2009, following a five-day retrial, a Superior Court jury found Petitioner guilty of first-degree murder and PFDCF. *See id*. at *2. On January 29, 2010, the Superior Court sentenced Petitioner to: (1) life imprisonment for the first-degree murder conviction; (2) twenty years at Level V for the PFDCF conviction; and (3) eight years at Level V, suspended after seven years and six months for six months at Level IV,

for the PDWPP conviction. (DI. 19-17 at 1-5). The Delaware Supreme Court affirmed Petitioner's convictions and sentence on May 13, 2011. *See Romeo*, 2011 WL 187784, at *4.

On March 14, 2012, Petitioner filed a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61"). (D.I. 19-17 at 6-10). On October 19, 2012, a Superior Court Commissioner issued a Report recommending that Petitioner's Rule 61 motion should be dismissed in part and denied in part. (D.I. 19-19 at 25-43). On November 12, 2012, the Superior Court adopted the Commissioner's Report and Recommendation, and dismissed in part and denied in part Petitioner's Rule 61 motion. (D.I. 19-22). Petitioner did not appeal that decision.

Petitioner filed his second *pro se* Rule 61 motion on May 27, 2014, along with a motion to appoint counsel. (D.I. 19-17 at 11-18). The Superior Court appointed counsel to represent Petitioner, and post-conviction counsel subsequently filed an amended Rule 61 motion on September 1, 2017. (D.I. 19-17 at 19-45). The State responded to the amended second Rule 61 motion (D.I. 19-25), Petitioner filed a reply (D.I. 19-26), the State filed a sur-reply (D.I. 19-27), and Petitioner filed a supplemental amended Rule 61 motion on July 16, 2018 (D.I. 19-17 at 49-70). The State responded to the supplemental amended Rule 61 motion (D.I. 19-30), and Petitioner filed a Reply on October 19, 2018 (D.I. 19-17 at 71-91). On February 21, 2019, the Superior Court denied Petitioner's second Rule 61 motion. *See Romeo*, 2019 WL 918578, at *31. The Delaware Supreme Court affirmed that decision on September 26, 2019. *See Romeo v. State*, 219 A.3d 995 (Table), 2019 WL 4733115, at *1 (Del. Sept. 26, 2019).

Petitioner electronically filed the instant habeas Petition on May 29, 2020. (D.I. 3; D.I. 13-1). The Petition asserts the following five grounds for relief: (1) trial counsel provided ineffective assistance by "failing to present the out-of-court statements of several key witnesses to the jury to

2

contradict the State's version of events and undermine the credibility of the State's witnesses," including statements from Frederick Holden, Sheila Mayo, and Naimah King (D.I. 3 at 5; D.I. 13-1 at 4); (2) trial counsel provided ineffective assistance by abandoning the ricochet defense on retrial because (a) he "failed to utilize the out-of-court statements of the State's witnesses in support of the proven successful defense of ricochet theory" and (b) because he failed to present a ballistics expert to rebut the testimony provided by the State's ballistics expert, Carl Rone, who was subsequently arrested for, and convicted of, misconduct in 2018 (D.I. 3 at 7, 17; D.I. 13-1 at 5); (3) trial counsel provided ineffective assistance by failing to cross-examine King about her inconsistent out-of-court statements (D.I. 3 at 8; D.I. 13-1 at 4); (4) trial counsel provided ineffective assistance by failing to object when the Superior Court admitted Holden's and Sheila's statements pursuant to 11 Del. C. § 3507 (D.I. 3 at 10); and (5) appellate counsel provided ineffective assistance by not raising the issues trial counsel should have raised as described in Claims One through Four (D.I. 3 at 16).

## II.  ONE YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling, which, when applicable, may extend the filing period. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual innocence exception).

Petitioner does not assert any facts triggering the application of § 2244(d)(1)(B), (C), or (D) for Claims One, Two (a), Three, Four, or Five. To the extent Claim Two (b)'s argument that the credibility of State's ballistics expert Carl Rone – who testified during Petitioner's retrial and stated that the bullet recovered from the victim was not consistent with a bullet being shot into the ground – was called into question and/or invalidated by Rone's criminal convictions in 2018 should be liberally construed as an attempt to trigger a later starting date under § 2244(d)(1)(D), the attempt is unavailing. In Claim Two, Petitioner alleges that trial counsel performed ineffectively during Petitioner's retrial by abandoning the ricochet defense raised in the original trial and by not presenting a ballistics expert to rebut Carl Rone's testimony. Contrary to Petitioner's belief, the revelation of Rone's misconduct and convictions in 2018 does not constitute the factual predicate underlying Petitioner's ineffective assistance of counsel argument in Claim Two (b), because Petitioner does not allege, and nothing in the record indicates, that Rone committed any misconduct in Petitioner's case. Given these circumstances, the Court concludes that the one-year period of limitations for all five Claims began to run when Petitioner's convictions became final under § 2244(d)(1)(A).

4

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Superior Court sentenced Petitioner on January 29, 2010, and the Delaware Supreme Court affirmed his convictions on May 13, 2011. *See Romeo*, 2011 WL 1877845, at *4. As a result, Petitioner's judgment of conviction became final ninety-days later, on August 12, 2011. Applying the one-year limitations period to that date, Petitioner had until August 13, 2012 to timely file a habeas petition.[1] *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run). Petitioner, however, electronically filed the undated Petition on May 29, 2020,[2] approximately seven years and two months after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner demonstrates a convincing claim of actual innocence excusing his untimely filing. The Court will discuss each doctrine in turn.

---

[1] The last day of the one-year period fell on August 12, 2012, which was a Sunday. Therefore, the filing period extended through the end of Monday August 13, 2012. *See* Fed. R. Civ. P. 6(a)(1)(C).

[2] The Court notes that Petitioner's motion for leave to proceed *in forma pauperis* and his trust fund account statement are dated May 26, 2020, and were electronically filed the same day as the Petition – May 29, 2020. Even if the Court were to view the dates on the motion to proceed ifp and the trust fund statement as providing the date of filing for the Petition under the prison mailbox rule, the three-day difference would not render the Petition timely filed.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). An untimely post-conviction motion is not considered to be properly filed for § 2244(d)(2) purposes. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005) (explaining that a state postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *See Pace*, 544 U.S. at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

The one-year limitations period in this case began to run on August 12, 2011, and ran for 215 days until Petitioner filed his first Rule 61 motion on March 14, 2012. The Superior Court dismissed in part, and otherwise denied, the Rule 61 motion on November 20, 2012, and Petitioner did not appeal that decision. Consequently, the first Rule 61 motion tolled the limitations period from March 14, 2012 through December 20, 2012, which includes the thirty-day appeal period.

The limitations clock started to run again on December 21, 2012, and ran the remaining 150 days without interruption until the limitations period expired on May 20, 2013. Petitioner's second Rule 61 motion, filed on May 27, 2014, does not toll the limitations period because it was filed after the limitations period had already expired. Thus, even after applying the available

statutory tolling, the Petition is time-barred, unless equitable tolling or the actual innocence exception apply.

### B. Equitable Tolling

AEDPA's one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *See id.* at 651-52. As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013); *see also Wallace*, 2 F.4th at 144 (reiterating that "the relevant inquiry for purposes of assessing extraordinary circumstances is "how severe an obstacle [the circumstance] creates with respect to meeting AEDPA's one-year deadline."). Moreover, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon,* 322 F.3d 768, 773 (3d Cir. 2003). The burden is on the petitioner to prove that he has been reasonably diligent in pursuing his rights. *See Urcinoli v. Cathel,* 546 F.3d 269, 277 (3d Cir. 2008).

7

Petitioner does not allege that any extraordinary circumstance prevented him from filing the instant Petition in a timely manner. Instead, he asserts that he has been "filing timely motions and exhausting state remedies, which should stop [his] collateral [relief] time and allow [him] to file after the one-year statute of limitations." (D.I. 3 at 13). As the Court previously explained, only Petitioner's first Rule 61 motion statutorily tolled the limitations period. Petitioner's erroneous calculation of the limitations period does not trigger equitable tolling. *See Lewis v. Phelps*, 672 F. Supp. 2d 669, 674 (D. Del. 2009) (holding that Lewis' error in computing AEDPA's one-year filing period did not warrant equitable tolling.).

Additionally, to the extent Petitioner relies on *Martinez v. Ryan*, 566 U.S. 1 (2012) to trigger equitable tolling, his reliance is unavailing. By its own terms, the *Martinez* decision provides a petitioner with an opportunity to overcome a procedural default of an ineffective assistance of trial counsel claim but does not impact a petitioner's obligation to comply with AEDPA's limitations period.

    **C.**  **Actual Innocence Exception**

A credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151. A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence; and (2) showing "by a preponderance of the evidence" that "a reasonable juror would have reasonable doubt about his guilt[] in light of the new evidence." *Wallace*, 2 F.4th at 151. Evidence is new for purposes of the actual innocence gateway, even if it was available for trial counsel through reasonable diligence, if trial counsel's failure to discover or present it is alleged as ineffective assistance of counsel. *See Reeves v. Fayette SCI*, 897 F.3d 154, 164 (3d Cir. 2018). Neither the Supreme Court nor the Third Circuit has articulated a specific standard for determining whether new innocence-gateway evidence is

8

reliable, but they have provided helpful guideposts. Broadly, three examples of reliable evidence are "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In his Reply, Petitioner appears to assert he is actually innocent of intentionally killing Antoine because he would have been found guilty of "reckless killing" if the State's ballistics expert Carl Rone had not testified during his retrial. (D.I. 24 at 27-28). Although somewhat convoluted, Petitioner argues that the fact that the jury could not reach a verdict on the first degree murder charge during his first trial – which took place without Carl Rone's testimony – demonstrates that the testimony provided by Carl Rone during his retrial played a vital role in the jury convicting him of first degree murder. (D.I. 24 at 23-24). He further suggests that the 2018 revelation of Carl Rone's misconduct and subsequent criminal convictions for that misconduct demonstrate the falsity or invalidity of the testimony Rone offered during Petitioner's retrial, thereby showing that Petitioner did not intentionally kill Antoine. (D.I. 24 at 27-28). This argument is unavailing. Rone's misconduct and convictions – which occurred years after Petitioner's retrial and did not involve the mishandling or falsification of ballistics evidence in Petitioner's case – do not constitute new, reliable evidence of Petitioner's factual innocence. At most, Rone's misconduct and related convictions amount to impeachment evidence, which "will seldom, if ever" demonstrate actual innocence by clear and convincing evidence. *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992). In sum, Rone's misconduct and criminal convictions that occurred years after Petitioner's conviction at issue do not constitute reliable evidence of Petitioner's actual innocence under the demanding standard of *McQuiggin* and *Schlup*.

Thus, the Court concludes that neither the doctrine of equitable tolling nor the actual

innocence/equitable exception are available to Petitioner on the facts he has presented Accordingly, the Court will dismiss the instant Petition as time barred.[3]

### III.   CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition is time-barred and is persuaded that reasonable jurists would not find this conclusion to be debatable.  Therefore, the Court will not issue a certificate of appealability.

### IV.   CONCLUSION

For the reasons stated, the Court will dismiss the instant Petition as time-barred without holding an evidentiary hearing or the issuance of a certificate of appealability.  An appropriate Order shall issue.

---

[3]   Given its determination that the Petition is time-barred, the Court will not address the State's alternate reasons for dismissing the Petition.